**NOT FOR CITATION**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADFER TRUST, | |
| Plaintiff, | No. C 05-1867 PJH |
| v. | **ORDER RE DEFENDANT'S MOTION FOR ATTORNEY'S FEES** |
| FIRST UNUM LIFE INSURANCE COMPANY, | |
| Defendant. | |

Before the court is the defendant's motion for an order awarding attorney's fees and costs, pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1). Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court GRANTS the motion, and orders that plaintiff pay defendant the amount of $15,000 in fees and costs.

**INTRODUCTION**

Plaintiff Radfer Trust ("Radfer") filed this action on May 5, 2005, alleging that defendant First UNUM Life Insurance Company of America ("First UNUM") wrongfully denied benefits owed to "John Doe" ("Doe") under a group long-term disability policy ("the Policy") that First Unum managed for Doe's former employer, the New York City law firm of Hawkins, Delafield, & Wood ("Hawkins"). Doe (the real party in interest) assigned his rights under the Policy to Radfer.

In 1993 and 1994, Doe was under treatment for schizophrenia, and was hospitalized twice for that condition. In 1995, when his schizophrenia became less acute, he took the Law School Aptitude Test, with accommodations based on his mental illness. After graduating from law school and passing the New York Bar Exam, and began working as a full-time associate for Hawkins in October 1998. First UNUM's coverage of Doe under the Policy became effective on October 1, 1998. The Policy provided payments for disability, with a 180-day elimination period beginning on the first day of disability, and with a 24-month limitation on claims for mental illness

Doe's symptoms began to return the following year, and he was subsequently terminated because he could not longer perform his job duties. On October 1, 1999, Doe filed a claim for long-term disability benefits. After UNUM denied the claim, Doe apparently assigned his claim to an entity known as the Radford Trust ("Radford"), a trust whose sole trustee is Doe's father, Bernard Doe. Radford filed suit in the District of Massachusetts, alleging a claim for recovery of unpaid benefits under ERISA and a claim of unfair competition or unfair business practices under Massachusetts law. First UNUM argued that the denial of benefits had been proper, because at the time that Doe's alleged disability commenced, he was ineligible for coverage because his active employment had terminated. The parties disputed the date of onset of disability, as well as the date of termination of employment, but the district court ultimately ruled in Radford's favor, finding that Doe was covered by the Policy and had become disabled before he was terminated.

On March 31, 2004, the court issued a 4-page order and judgment, and on June 15, 2004, the court issued a Memorandum and Order setting forth its reasoning. See Radford Trust v. First UNUM Life Ins. Co. of America, 321 F.Supp. 2d 226 (D. Mass. 2004). The court found that Doe was entitled to receive benefits under the Policy as of October 17, 1999, and for the twenty-four months thereafter, and that Radford was entitled to collect on Doe's behalf.

The court noted that "[t]wenty-four months was the maximum period [under the Policy] for receipt of benefits for disability due to a 'mental illness,' with certain exceptions relating to confinement in a hospital or institution after that period." Id. at 251. The court added, "To the

1  extent that Doe might have considered his schizophrenia a physical disability rather than a
2  mental illness, or to the extent he might have had claims for confinement after the twenty-four
3  months," Radford had presented neither issue to First UNUM and thus no record was before
4  the court. Id. The court noted that any decision with regard to whether Doe's disability was a
5  "mental" one or a "physical" one was for First UNUM to make in the first instance, and held that
6  "should First UNUM or any court or other entity with the power to pass on such matters
7  determine that Doe's disability is a 'physical' one, entitling him to receive benefits for the
8  length of his disability, he would have to be treated as if that determination had been made
9  before his eligibility for benefits for "mental" disability expired." Id.

10  Meanwhile, on May 25, 2004, an entity called the "Radfer Trust" ("Radfer") filed a
11  lawsuit in the Northern District of California, Radfer Trust v. First UNUM Life Ins. Co., C-04-
12  2054 FMS. The suit was assigned to the Hon. Fern M. Smith. Radfer alleged that First
13  UNUM was liable under ERISA for benefits to Doe beyond those awarded by the
14  Massachusetts court. The complaint alleged, in two causes of action, that two provisions in
15  the Policy were unenforceable as a matter of New York law – the mental illness limitation and
16  the Social Security offset provision.

17  In September 2004, First UNUM filed a motion to dismiss for lack of personal
18  jurisdiction and improper venue, and also asserting that Radfer's claims were barred by res
19  judicata, collateral estoppel, and failure to exhaust administrative remedies. In the alternative,
20  First UNUM argued that the action should be transferred to the District of Massachusetts for
21  the convenience of parties and witnesses, in the interests of justice. On October 25, 2004,
22  Judge Smith denied the motion to dismiss for lack of personal jurisdiction and improper
23  venue, but found that Radfer's claims were barred by res judicata. See Radfer Trust v. First
24  UNUM Life Insurance Co. of America, 2004 WL 2385000 (N.D. Cal., Oct. 25, 2004).

25  Judge Smith described Radfer as "a second incarnation of Radford," noting that

26  [i]n the instrument that created Radford, John Doe's aging father, Bernard Doe, was named as the trustee exclusively responsible for determining distribution of
27  assets and no successor was named. Radfer, which provides for a successor trustee when Bernard Doe dies, was created after Judge Young's judgment in
28

favor of Radford in March 2004.[1]

Id. at *1.

Res judicata, or claim preclusion, bars a party from bringing a claim if a court of competent jurisdiction has rendered final judgment on the merits of the claim in a previous action involving the same parties or their privies. In re International Nutronics, Inc., 28 F.3d 965, 969 (9th Cir.1994). "Res judicata bars all grounds for recovery that could have been asserted, whether they were or not, in a prior suit between the same parties on the same cause of action." Id. at 969 (citation omitted). In order to bar a later suit under the doctrine of res judicata, an adjudication must (1) involve the same "claim" as the later suit, (2) have reached a final judgment on the merits, and (3) involve the same parties or their privies. Blonder-Tongue Labs, Inc. v. Univ. of Ill. Found., 402 U.S. 313, 323-24 (1971); Nordhorn v. Ladish Co., 9 F.3d 1402, 1404 (9th Cir., 1993).

Judge Smith found that the second and third requirements, above, were met because there was a final judgment on the merits in the Massachusetts action, and the plaintiff Radfer was a second incarnation of the plaintiff Radford, both of which were established to sue First UNUM on behalf of Doe, the real party in interest. Radfer, 2004 WL 2385000 at *3. With regard to the first requirement – whether the claims were identical – Judge Smith noted that the two suits arose out of the same transactional nucleus of facts, because in both actions the plaintiffs were seeking disability benefits allegedly owed to Doe under the Policy because of the onset of schizophrenia while he was employed by Hawkins. Id. Judge Smith found further that the grounds for recovery asserted by Radfer in the California action could have been asserted by Radford in its case before the Massachusetts court, and found that the similarity of arguments made by Radford before the Massachusetts court and the arguments made by Radfer in the California action were evidence that the two claims were the same. Id. at *4.

Judge Smith found that Radfer, in its previous incarnation as Radford, had a full and fair opportunity to litigate its claims against First UNUM in the Massachusetts court, which entered

---

[1] The declaration of counsel that provided this information was sealed by the court.

4

judgment in its favor. "The Massachusetts court's dicta implying the possibility of further litigation does not change the fact that final judgment has already been rendered on the merits of Radfer's claim against First UNUM. The doctrine of res judicata prevents Radfer from taking a second bite at the apple." Id. Judge Smith dismissed the complaint without leave to amend. Radfer filed a motion to amend the judgment, but the request was denied. Radfer filed no notice of appeal from this decision.

On March 10, 2005, Judge Young issued an order in the Massachusetts case directing UNUM to make a determination, within 30 days of the date of the order, whether Doe's disability was a "mental" or a "physical" one, and to provide that determination to Radford. On April 8, 2005, Doe/Radford received the letter denying Doe's initial appeal of First UNUM's decision that the 24-month limitation applied to Doe's diagnosis of schizophrenia.

On May 5, 2005, Radfer filed the complaint in the present action, alleging two causes of action identical to the two causes of action asserted in the case before Judge Smith, and adding a third cause of action for fraudulent or negligent misrepresentation. First UNUM moved to dismiss, and plaintiff filed a first amended complaint with some minor changes from the original complaint, plus one additional cause of action.

In the new first cause of action, Radfer alleged that "[p]laintiff's [sic] disability is not one within the policy's 24-month limitation for 'mental illness,'" and that First UNUM's failure to pay long-term disability benefits due to Doe and Radfer was a "violation of the terms" of the Policy

In the second cause of action, Radfer asserted that the 24-month cap on benefits based on mental illness was unenforceable under New York law because First UNUM did not disclose the mental illness limitation in its Synopsis of benefits that was provided to Doe, and did not set forth the mental illness limitation in bold type.

In the third cause of action, Radfer alleged that the Social Security offset was unenforceable under New York law because the Policy did not disclose the offset in bold type or prominent language.

In the fourth cause of action for fraud and negligent misrepresentation, Radfer asserted that immediately after the March 2004 judgment entered by Judge Young in the District of

Massachusetts, Radfer made various attempts to cause the New York Department of Insurance to order First UNUM to make further benefit payments. Radfer claimed that UNUM then made false representations to the Department of Insurance, including that a court had ordered the Department to stay its review until the court proceeded further. Radfer asserted that the Department in fact ceased review based on First UNUM's false representations.

First UNUM moved to dismiss. On August 17, 2005, the court granted the motion, finding that the first cause of action was barred by failure to exhaust administrative remedies, because Radfer filed the action before either it or Doe had exhausted the Plan's internal review procedure and before First UNUM had issued its decision on the final appeal of the applicability of the 24-month limitation. The court found further that the second and third causes of action were barred by the doctrine of res judicata, and that the fourth cause of action failed to state a claim. Because the court concluded that amendment would be futile, the dismissal was without leave to amend.

First UNUM now seeks an order awarding attorney's fees in the amount of $29,153.50 and costs in the amount of $241.30.

**DISCUSSION**

A.  Legal Standard

In an ERISA action to recover unpaid disability benefits, the court in its discretion may award reasonable attorney's fees to either party in a benefits claim action. 29 U.S.C. § 1132(g)(1); see also Tingley v. Pixley-Richards West, Inc., 958 F.2d 908, 909 (9th Cir. 1992). The court's discretion is guided by five criteria, known as the Hummell factors. These are 1) the degree of the opposing party's culpability or bad faith, 2) the ability of the opposing party to satisfy an award of fees, 3) whether an award of fees against the opposing party would deter others from acting in similar circumstances, 4) whether the party requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA, and 5) the relative merits of the parties' positions. Honolulu Joint Apprenticeship & Training Comm. v. Foster, 332 F.3d 1234, 1238-39 (9th Cir. 2003) (citing Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980)). None of the

Hummell factors is decisive; "various permutations and combinations can support an award of attorney fees." Paddack v. Morris, 783 F.2d 844, 846 (9th Cir.1986).

Generally, the Hummell factors are applied to plaintiffs and defendants alike. See Tingley, 958 F.2d at 909. However, while recognizing that either a plaintiff or a defendant may be awarded fees under § 1132(g)(1) as a prevailing party, the Ninth Circuit has also indicated that the Hummell factors "very frequently suggest that attorney's fees should not be charged against ERISA plaintiffs." Id. at 909 (citation and quotation omitted). In particular, the Ninth Circuit recognizes "little benefit to be had by charging individual plan-beneficiary plaintiffs . . . with costs for policy reasons that speak more appropriately to institutional litigants in the ERISA arena. Id. at 910; see also Corder v. Howard Johnson & Co., 53 F.3d 225, 231 (9th Cir. 1995) (noting that Ninth Circuit disfavors awards of attorney's fees against individual ERISA plaintiffs who seek pension benefits to which they believe they are entitled).

In decisions more recent than Tingley and Corder, the Ninth Circuit emphasized that it does not disfavor fee awards against ERISA plaintiffs.

> The statute is clear on its face – the playing field is level. In Corder, we did hold that "the district court abused its discretion in awarding full fees against them." We pointed out that our analysis was consistent with and was a part of the Hummell factors. Thus, our analysis in this case must focus only on the Hummell factors, without favoring one side or the other.

Estate of Shockley v. Alyeska Pipeline Service Co., 130 F.3d 403, 408 (9th Cir. 1997); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1236 (9th Cir. 2000) (citing Alyeska Pipeline, and noting that the court should not favor one side over the other because "the playing field is level").

In a 2003 case, the Ninth Circuit harmonized these two apparently conflicting positions, declaring that "[o]ur cases are not inconsistent." Honolulu Joint Apprenticeship, 332 F.3d at 1240. The court emphasized not only that "our application of the Hummell factors must recognize the remedial purpose of ERISA in favor of participants and beneficiaries," and that a prevailing participant or beneficiary "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust," but also that the "clear statutory language" makes fees available to "either party." Id. at 1239-40 (citations and quotations

7

omitted).

B.   Defendant's Motion for Attorney's Fees

First UNUM argues that all five of the Hummell factors favor its motion.  First UNUM contends that plaintiff's culpability or bad faith is shown by the fact that this case is the third lawsuit filed by Radfer or its "alter ego" (Radford) regarding the exact same issues.  First UNUM contends that the present lawsuit was completely without hope of succeeding at the time it was filed, and that the court may consequently infer that plaintiff filed it for the purpose of harassing defendant rather than to obtain a favorable judgment.  In particular, First UNUM asserts, based on the fact that this action was filed while plaintiff's "alter ego" was making multiple motions and pursuing additional remedies related to the first action before the Massachusetts court, the court should conclude that plaintiff intended to force First UNUM to defend this matter on two fronts on opposite coasts.

In opposition, Radfer asserts that neither it, nor the insured (John Doe), nor plaintiff's counsel (David Polin) acted in bad faith, claiming that none of them realized that the matter was res judicata when case No. C-04-2054 FMS was filed.[2]  Radfer contends that it filed case No. C-04-2054 FMS because it was "discouraged" by First UNUM's delay in issuing the

---

[2] Radfer asserts, inexplicably, that it was acting on the advice of its Massachusetts attorney Warren Pyle (actually Radford's Massachusetts attorney) when it filed the present action. Radfer also claims that its counsel Mr. Polin did not know of the existence of case No. C-04-2054 FMS, the suit pending before Judge Smith, and that plaintiff (not clear whether Radfer is referring to itself or to Doe) did not inform Mr. Polin of the existence of Judge Smith's decision dismissing the case. Radfer asserts that Mr. Polin had "no reason whatsoever to imagine that the matter could be res judicata." (Mr. Polin provides no declaration to that effect, but rather appends a 4-line declaration to the opposition brief, stating that "all the factual statements in this opposition are, to my knowledge, true and correct, unless it is otherwise stated in the opposition.") John Doe states in his declaration that he did not bring the decision to Mr. Polin's attention because his Massachusetts attorney told him that the dismissal of case No. C-04-2054 FMS "did not bar a new suit." (However, Warren Pyle, the Massachusetts attorney who represented Radford, states in a declaration that he advised Doe that Judge Smith's order did not bar a new suit to recover benefits in excess of those awarded in the Massachusetts action because a claim for those benefits could not have been brought before Judge Smith.)  Doe's claims notwithstanding, the court finds Mr. Polin's assertion that he was unaware of the existence of case No. C-04-2054 FMS to be not credible in view of the undeniable similarities between the complaint filed in that case and the complaint filed in the present case, and plaintiff's assertions that Mr. Polin did not act as a "mere rubber stamp for a complaint written by a client." The court also finds the claim that Mr. Polin "had no reason whatever to imagine that the matter could be res judicata" to be not credible.

8

administrative decision on the mental cap.  Radfer asserts that although Judge Smith called the lawsuit a "second bite of the apple," it did not appear so to Radfer at the time, but rather appeared to be a "perfectly logical and legal way to settle a matter that was threatening to drag on indefinitely."  Radfer maintains that it believed that "the matter" had not yet been decided by the Massachusetts court.

Radfer acknowledges that rather than filing the present action, the best course would have been to file an appeal from Judge Smith's decision, but contends that it did not do so because First UNUM continued to process the claim.[3]  Radfer then asserts that it waited until First UNUM had issued its decision on the mental cap limitation (April 2005) before filing the present action (May 2005).  What Radfer refuses to acknowledge, however, is that the April 2005 decision was First UNUM's initial decision, not the final decision that would allow the plaintiff to file suit in district court.

Radfer claims that this action was not filed in order to harass First UNUM, but simply to "appeal the defendant's administrative decision rendered in April 2005."  Radfer tries to characterize it as an "honest legal mistake," and also asserts that Doe, the insured, is schizophrenic and suffers from "disorganized thinking" which "could very well cause him to analyze his case in a manner that others have found questionable."

The court finds that this factor strongly favors First UNUM.  In order to avoid a finding of bad faith under the Hummell factors, a plaintiff "must have a reasonable belief that [he] could prove an actionable ERISA claim."  Cline, 200 F.3d at 1236.  Despite Radfer's attempts to justify its actions (claiming that it filed suit on the advice of Radford Trust's Massachusetts attorney, claiming that Doe's disorganized thinking caused him to wrongly analyze the case, claiming that Mr. Polin was unaware of the pendency of case No. C-04-2054 FMS) the fact remains that Radfer filed this action alleging the same claims it had alleged in case No. C-04-2054 FMS, and then amended the complaint to add a claim that was plainly barred by failure

---

[3] Radfer claims that Mr. Polin was unaware of any continuing proceedings or motions being filed in Massachusetts.  Yet he was plainly aware of the existence of the Massachusetts action, as the complaint references the Massachusetts court's order directing First UNUM to pay plaintiff two years' worth of benefits for the benefit of John Doe.

to exhaust. The complaint was frivolous, and can therefore be characterized as having been filed in bad faith.

With regard to the second Hummell factor – the ability of the opposing party to satisfy an award of fees – First UNUM asserts that it "suspects" that Doe, Radfer's beneficiary, formerly an attorney in New York, has been preparing the pleadings in this case, and is using plaintiff's counsel David Polin as "local counsel" only. First UNUM contends that Doe has the ability to satisfy the fee award, as Doe received a check in the amount of $181,899.51 from First UNUM for payment of benefits. First UNUM submits that as Doe is acting as an attorney and is "likely making all decisions related to this action," and as Doe can satisfy a fee award, the second factor is satisfied.

In opposition, Radfer asserts that neither it nor Doe has the ability to satisfy an award of attorney's fees. Radfer claims in its opposition brief that it is "holding money for multiple beneficiaries, the insured among them" – that while it did accept the $181,000 check from First UNUM, it has not accepted that amount in satisfaction of its claims, and has placed the money in an interest-bearing account. Radfer claims that Doe is living on public assistance.

Radfer submits a declaration from Doe, who maintains that he did not receive a check from First UNUM for $181,899.51. According to Doe, First UNUM gave a check for that amount payable jointly to Radford and its attorney Warren Pyle in June 2005, to cover the "first two years' benefits," as ordered by the Massachusetts court. Doe asserts that Radford has "multiple beneficiaries," and that trustee Bernard Doe has exclusive power to decide which of the beneficiaries will receive funds. He claims that he has received no money from Bernard Doe, and that Bernard Doe has stated that the "other beneficiaries" will receive all of the $181,899.51. Doe asserts that beyond the assignment of any additional benefits he might receive from First UNUM under the policy, Radfer, the plaintiff in the present action, has no assets. Doe claims that he himself is not working, has no income, and lives on public assistance.

The court finds that this factor does not favor either side, as neither side has established that Radfer has, or does not have, the ability to pay an award of attorney's fees.

First UNUM submits no evidence supporting its claim that Radfer itself has the assets to pay First UNUM's attorney's fees. First UNUM refers throughout its papers to Radfer and Radford as "alter egos," but has not established that the two Trusts are in fact alter egos.[4]

For its part, Radfer submits no declaration from its trustee, and no other evidence supporting the claim that it has no assets. Indeed, Radfer states in its opposition that it received a check for over $181,000 in the Massachusetts action (though this claim is contradicted by Doe's assertion that the money from the Massachusetts action went to Radford). Radfer's evidence consists of a declaration from Radford's Massachusetts attorney, stating that he advised Doe that Judge Smith's dismissal order did not bar the filing of another lawsuit on the same claims, as well as a declaration from Doe, who is described by Radfer in its opposition to the motion as suffering from "paranoid schizophrenia, one of the symptoms of which is 'disorganized thinking,'" and as suffering from "a disability that affects his judgment in complex matters." It is Doe who asserts that Radfer has no assets other than the assigned future hypothetical benefits that he (Doe) hopes to receive under the policy, and that he has been informed by the trustee of the Radford Trust that he will receive none of the money awarded him by the Massachusetts court, because the money will go instead to some other unidentified "beneficiaries" of the Radford Trust.[5]

With regard to the third factor – whether an award of fees would deter other persons acting under similar circumstances – First UNUM argues that an award of fees would deter claimants from pursuing baseless claims in the future, while Radfer argues that there is no reason to think that an award of fees would have a significant impact on other claimants.

---

[4] On the other hand, Radfer apparently assumes an identity of interest between itself and Radford, as it states in the opposition that it (Radfer) "won a decision from the United States District Court for Massachusetts, awarding two years of benefits, to which the insured (John Doe) was unquestionably entitled," and that it then "filed a second action, which was heard by Judge Smith of this Court." Radfer states further that it "is a trust that is holding money for multiple beneficiaries, the insured among them" and that it "has received a check for over $181,000, but it has not accepted that amount as satisfaction of any claim, and has placed the money in an interest-bearing account." Radfer also refers to Warren Pyle, attorney for Radford, as its own Massachusetts attorney.

[5] If this is true, it is cause for concern.

11

Radfer also claims that awarding fees to First UNUM would "have the effect of rewarding defendant for the foot-dragging behavior that made it necessary for the plaintiff to sue in the first place" (ignoring the fact that Radfer sued First UNUM before Doe was entitled to challenge First UNUM's denial of the challenge to the mental illness cap).

The court finds that the third factor does not favor either side. The third factor is, generally speaking, more appropriate to a determination of whether to award fees to a prevailing plaintiff than to award fees to a defendant. See Tingley, 958 F.2d at 910. This factor is more relevant when it is the participant/beneficiary who is seeking fees from the defendant insurer, as the "deterrence" referred to is more likely the deterrence of unjustified denial of claims by insurers or ERISA plans. Here, awarding fees to First UNUM is not likely to deter other plaintiffs from filing baseless claims, as it is not probable that other plaintiffs would even know about the award of fees in this case.

With regard to the fourth factor – the benefit conferred on the members of the Plan as a whole – First UNUM contends that an award of attorney's fees against plaintiff would ultimately benefit all participants in the Plan by allowing First UNUM to recover its costs and attorney's fees incurred in defending against plaintiff's meritless legal action, while Radfer argues that the imposition of fees would benefit First UNUM, not members of pension plans.

The court finds that the fourth factor does not favor either side, as it is a factor that is more appropriate to at determination whether to award fees to a plaintiff than to a defendant. See Bogue v. Ampex Corp., 976 F.2d 1319, 1327 (9th Cir. 1992); see also Tingley, 958 F.2d at 910. The benefit asserted by First UNUM – that obtaining fees will mean that First UNUM has more money available to satisfy claims – does not appear to be what the Ninth Circuit has had in mind when it has applied the Hummell factors. In a case such as this one, the interest of the insurance company is in avoiding liability, not in making funds available for the Plan.

Finally, with regard to the fifth factor – the relative merits of the parties' positions – First UNUM claims that as it meets at least four of the five Hummell factors, the court should find that First UNUM's request for fees should be granted. Radfer reiterates that it acted in good faith, pursuant to an attorney's advice (Radford's Massachusetts attorney), and denies First

UNUM's assertion that it has filed the same claims repeatedly. The court finds that the fifth factor also favors First UNUM. Plaintiff's protestations aside, this case is completely without merit.

With regard to the reasonableness of the fees requested, plaintiff argues only that it is improper for First UNUM to seek fees for prevailing with regard to the non-ERISA claims. First UNUM does not respond to this argument. It is true that ERISA does not authorize an award of fees for non-ERISA claims. Nevertheless, This is an action brought by an ERISA participant or beneficiary, against an ERISA Plan and an ERISA insurer, in which the statute authorizes payment of fees for the prevailing party. The fact that plaintiff may have alleged in this action that various provisions of the Plan were unlawful under New York law does not mean that First UNUM, as the prevailing party, should not recover its fees for defending against the suit, where plaintiff's claims were barred by res judicata, because the same claims were previously found to be res judicata, based on the plaintiff's having previously filed an ERISA action in Massachusetts.

Plaintiff does not otherwise challenge the amount requested by First UNUM in attorneys' fees. The general rule is that when awarding fees under ERISA, the court must determine a "lodestar" amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. Credit Managers Ass'n of So. Cal. v. Kennesaw Life and Accident Ins. Co., 25 F.3d 743, 750 (9th Cir. 1994). The court may increase or decrease the lodestar fee based on the factors identified by the Ninth Circuit in Kerr v. Screen Actors Guild, Inc., 526 F.2d 67 (9th Cir. 1975)[6] that are not subsumed within the initial calculation of the lodestar. Credit Managers, 25 F.3d at 750.

Having reviewed the documentation submitted by counsel for First UNUM, as well as

---

[6] These factors are 1) the time and labor required, 2) the novelty and difficulty of the questions involved, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the undesirability of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases. Kerr, 526 F.2d at 70.

13

the other papers filed by the parties in this case, the court finds that the number of hours spent by First UNUM's counsel and the hourly rate charged are reasonable in view of the competence of counsel in the filed of ERISA litigation, the relative lack of complexity of the issues, and Radfer's persistence in filing an action asserting claims that had already been declared res judicata by another judge of this court.

## CONCLUSION

First UNUM's motion is GRANTED. In summary, the first Hummell factor – plaintiff's culpability or bad faith – strongly supports an award of fees to First UNUM, as this action was plainly frivolous at the time it was filed. Apart from the first cause of action, which was subject to dismissal for failure to exhaust administrative remedies, the claims asserted in the complaint were identical to the claims that Judge Smith had found to be barred by res judicata. The third and fourth Hummell factors are neutral, and in any event, are not particularly relevant in a case where fees are sought by the defendant rather than the plaintiff. The fifth factor – the relative merits of the parties' positions – also favors First UNUM.

The second factor does not favor either side, as neither side has provided any evidence to support its claim. Radford, the plaintiff in the Massachusetts action, was awarded almost $182,000 for the benefit of Doe. As detailed in the above discussion, both Radfer and Doe appear to view the Radford Trust and the Radfer Trust as fictions, and to consider Doe to be the real party in interest. Doe claims to be unable to work, and to have no assets other than the money that was awarded him by the Massachusetts court. Thus, while the court finds that First UNUM is entitled to some award of fees, and that the hours claimed and the hourly billing rate appear reasonable, the court also finds that the amount of fees requested by First UNUM should be reduced in light of the plaintiff's ability to pay. The court finds a 50% reduction in the amount of fees sought is appropriate under the facts presented here.

In accordance with the foregoing, the court GRANTS defendant's motion for attorney's fees, and awards First Unum $15,000 in fees and costs.

/ / /

/ / /

The date for the hearing on this motion, previously set for Wednesday, November 2, 2005, is VACATED.

**IT IS SO ORDERED.**

Dated: November 1, 2005

_____
PHYLLIS J. HAMILTON
United States District Judge